IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE COUNTY, FLORIDA

CIVIL DIVISION

JOHN MICHAEL DEVLIN,

    Plaintiff,                                                 CASE NO.    23-CA

v.

BANK OF AMERICA CORPORATION,

    Defendant.
_____/

## COMPLAINT

Plaintiff, JOHN MICHAEL DEVLIN ("Plaintiff" or "Devlin"), by and through his undersigned counsel, sues Defendant, BANK OF AMERICA CORPORATION ("Defendant Bank of America"), and in furtherance thereof, alleges the following:

### JURISDICTION, VENUE AND PARTIES

1. This Court has subject matter jurisdiction over this action because this is a civil cause of action for damages in excess of $50,000.00, exclusive of attorneys' fees, interest, and costs.

2. Defendant Bank of America is a Foreign Profit Corporation, authorized to transact business in and throughout the State of Florida.

3. This Court has personal jurisdiction over Defendant Bank of America because Defendant Bank of America has availed itself of Florida's jurisdiction due to its continuous and systematic contacts with the State of Florida.

4. This Court has personal jurisdiction over Defendant Bank of America pursuant to and in accordance with Florida's long-arm statute, §48.193, Fla. Stat.

5. Devlin is a resident of Lee County, Florida.

6. Venue is appropriate in Lee County because the events giving rise to the causes of action asserted herein occurred within Lee County, Florida.

7. All conditions precedent to the filing of this action have been satisfied and/or have been waived.

8. Devlin has retained the undersigned law firm to represent his interests in this action and has agreed to pay said law firm a reasonable fee for its services.

## GENERAL ALLEGATIONS

9. In 1998, Devlin opened a Personal Interest Checking Account with FleetBoston Financial Corporation ("Fleet"), Account Number ▮▮▮▮▮▮▮▮ (the "Fleet Account").

10. At the time, Devlin was single, and thus Devlin desired for his mother, Ms. Joan A. Noble ("Ms. Noble"), to inherit the Fleet Account and its proceeds if he were to predecease her.

11. Accordingly, based upon Devlin's desires and instructions, Fleet titled the Fleet Account as "J. Michael Devlin ITF Joan A. Noble."

12. The "ITF" in the Fleet Account's title stood for "In Trust For."

13. Based upon how Fleet titled the Fleet Account pursuant to Devlin's desires and instructions, neither Ms. Noble, nor anyone else on her behalf, could access the Fleet Account or its funds, unless Devlin predeceased her.

14. While Fleet managed and operated the Fleet Account, if Devlin did not predecease his mother, Ms. Noble, then Ms. Noble would not be allowed to access the Fleet Account or its funds.

15. For example, while Fleet managed and operated the Fleet Account, so long as Devlin was still alive, someone with a Durable Power of Attorney executed by Ms. Noble would not have been allowed access to the Fleet Account or its funds.

16. In 2003, Devlin became a Lee County resident.

17. In 2004, Fleet and Defendant Bank of America merged.

18. After Fleet and Defendant Bank of America merged in ▇ the Fleet Account became a Bank of America Account, with the same account number (the "Bank of America Account").

19. To induce Devlin into becoming and staying a Bank of America customer and keeping the Fleet Account funds in the new Bank of America Account, Defendant Bank of America repeatedly represented to Devlin, in writing, that nothing about the Fleet Account would change when the Fleet Account became a Bank of America Account.

20. To induce Devlin into becoming and staying a Bank of America customer and keeping the Fleet Account funds in the new Bank of America Account, Defendant Bank of America repeatedly represented to Devlin, in writing, that Defendant Bank of America would treat, manage, operate, and handle the Bank of America Account the same way Fleet treated, managed, operated, and handled the Fleet Account.

21. As a result of Defendant Bank of America's representations, Devlin continued using Bank of America, and kept his Fleet Account funds in the Bank of America Account.

22. Based upon Defendant Bank of America's representations, which Devlin reasonably and justifiably relied upon, Devlin expected that, unless Devlin predeceased his mother, no one would be able to access the Bank of America Account or its funds, except him.

23. However, contrary to Defendant Bank of America's repeated written representations it had made to Devlin, Defendant Bank of America materially altered who could access the Fleet Account when it became the Bank of America Account.

24. Without Devlin's knowledge or consent, and contrary to Defendant Bank of America's repeated written representations it had made to Devlin, Defendant Bank of America changed who could access the Bank of America Account.

25. When Fleet managed and operated the Fleet Account, only Devlin could access the Fleet Account, unless he died.

26. When Defendant Bank of America took over the Fleet Account, Bank of America changed the account access so that either Devlin or his mother, Ms. Noble, could access the Bank of America Account and its funds at any time.

27. When Defendant Bank of America took over the Fleet Account, Bank of America changed the account access so that Devlin's mother, Ms. Noble, could access the Bank of America Account regardless of whether Devlin predeceased his mother or not.

28. Defendant Bank of America did not tell Devlin about this change to his Bank of America Account.

29. Defendant Bank of America made this change without Devlin's knowledge or consent.

30. Due to Defendant Bank of America's actions, Defendant Bank of America gave Ms. Noble and her agents direct, immediate, and unconditional access to the Bank of America Account and its funds, which Ms. Noble did not have when Fleet originally managed the account.

31. Had Defendant Bank of America advised Devlin of this material change to his account access, as it should have done, Devlin would have switched banks or changed the Bank of America Account access.

32. Defendant Bank of America knew or should have known it should have obtained Devlin's consent before changing who had access to Devlin's funds in the Bank of America Account.

33. In the winter of 2021, Defendant Bank of America had still not conveyed to Devlin that it had changed who could access the Bank of America Account or its funds.

34. In the winter of 2021, Devlin still believed only he could access the Bank of America Account until he died.

35. Based upon this expectation, in the winter of 2021, Devlin deposited $244,988.04 into the Bank of America Account.

36. Had Devlin known Ms. Noble could access the Bank of America Account and its funds in the winter of 2021, he would not have deposited $244,988.04 into the Bank of America Account.

37. Devlin has a sister named Maryanne Dayton ("Dayton").

38. Dayton was, and still is, a resident of New Jersey.

39. Prior to December of 2021, Dayton obtained a Durable Power of Attorney from Ms. Noble in New Jersey (the "POA").

40. Based upon Defendant Bank of America's previous representations made to Devlin about who could access the Bank of America Account, Devlin did not believe, know, or understand that Dayton could use the POA to access the Bank of America Account.

41. In December of 2021, less than a month after Devlin deposited the $244,988.04 in funds into the Bank of America Account, Dayton walked into one of Defendant Bank of America's branches in New Jersey, used the POA to access the Bank of America Account, withdrew $200,000.00 from the Bank of America Account, and walked out of the branch.

42. Defendant Bank of America did not try to alert or notify Devlin when Dayton was accessing or withdrawing $200,000.00 from the Bank of America Account.

43. Had Fleet managed the funds in the Fleet Account at the time, Dayton would not have been able to access the Fleet Account or the funds in the Fleet Account using the POA.

44. Based upon Defendant Bank of America's repeated written representations to Devlin, Dayton should not have been able to access the Bank of America Account and withdraw funds from the Bank of America Account using the POA.

45. Defendant Bank of America should not have given Dayton access to the Bank of America Account.

46. Defendant Bank of America should not have allowed Dayton to withdraw $200,000.00 from the Bank of America Account.

47. Defendant Bank of America unlawfully gave Dayton access to the Bank of America Account, which allowed Dayton to withdraw $200,000.00 from the Bank of America Account.

48. Devlin has repeatedly notified and complained to Defendant Bank of America about this issue.

49. Defendant Bank of America told Devlin it disbursed the funds to Dayton due to an "internal error."

50. However, despite repeated requests and demands to address and rectify the issue, Defendant Bank of America has not done anything to address or rectify its error.

51. After Devlin complained to Defendant Bank of America, rather than rectify the issue, Defendant Bank of America simply re-titled the Bank of America Account to "J. Michael Devlin/Joan A. Noble."

52. By doing this, Defendant Bank of America completely removed the "In Trust For" from the Bank of America Account.

53. Defendant Bank of America also made this change without Devlin's knowledge or consent.

## COUNT ONE – NEGLIGENCE

Devlin sues Defendant Bank of America for negligence, and alleges the following:

54. The allegations set forth in paragraphs 1 through 53, above, are hereby re-alleged and incorporated herein by reference.

55. Defendant Bank of America owed Devlin a duty to safeguard access to the Bank of America Account and its funds, and ensure no one, besides Devlin, could access the Bank of America Account or its funds while Devlin was alive.

56. Defendant Bank of America materially breached its duty to Devlin when Defendant Bank of America gave Dayton access to the Bank of America Account and allowed her to withdraw $200,000.00 in funds from the Bank of America Account.

57. As a direct and proximate cause of Defendant Bank of America's material breaches of its duty to Devlin, Devlin has suffered $200,000.00 in damages.

eFiled Lee County Clerk of Courts Page 7

Wherefore, Plaintiff, JOHN MICHAEL DEVLIN, demands a judgment against Defendant, BANK OF AMERICA CORPORATION, for compensatory damages, costs, interest, and for such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT TWO – FRAUD IN THE INDUCEMENT

### (Pled in the alternative to Count One)

Devlin sues Defendant Bank of America for fraud in the inducement, and alleges the following:

58. The allegations set forth in paragraphs 1 through 53, above, are hereby re-alleged and incorporated herein by reference.

59. Defendant Bank of America made a false statement of material fact when it repeatedly represented to Devlin, in writing, that it would manage and operate the Bank of America Account the same way as Fleet had managed and operated the Fleet Account for Devlin.

60. Contrary to Defendant Bank of America's representations, Defendant Bank of America changed who could access the Bank of America Account, and when.

61. Defendant Bank of America knew or should have known that its representations to Devlin were false when it made them to Devlin.

62. Defendant Bank of America made these representations to Devlin to induce Devlin into keeping his funds with Defendant Bank of America.

63. Devlin justifiably relied upon Defendant Bank of America's false statements, to his detriment, when he deposited $244,988.04 into the Bank of America Account in the winter of ▇▇▇▇.

64. As a result of Defendant Bank of America's fraud in the inducement, Devlin has suffered $200,000.00 in damages.

Wherefore, Plaintiff, JOHN MICHAEL DEVLIN, demands a judgment against Defendant, BANK OF AMERICA CORPORATION, for compensatory damages, costs, interest, and for such other and further relief as this Court deems just and appropriate under the circumstances.

Dated July 31, 2023.

                    **COLEMAN LITIGATION PA**

                    ***/s/ Joseph M. Coleman***
Joseph M. Coleman, Esq.
Florida Bar No. 119110
4851 Tamiami Trail N. Ste. 200
Naples, Florida 34103
(239) 887-9325
jcoleman@colemanlit.com
admin@colemanlit.com
*Attorney for John Michael Devlin*